JANUARY TERM, 1881, No. 198.                    MARCH 1ST, 1882.

## Sayer to use *versus* Schroeder.

1. Where the Court below was not requested to charge in any particular way there can be no reversal for a mere omission to charge.

2. The defendant in a judgment, which was a lien on real estate, by amicable action revived the judgment April 2d.    He had made an agreement to sell the real estate December 3d preceding, and had executed and delivered a deed for it March 26th; but the deed was not recorded until April 3d.  The purchaser had no notice of the revival.    There was evidence that the holders of the judgment knew in December of the agreement of sale, and then received, on account of their judgment, some of the purchase-money, with knowledge that it came from the purchaser.  The purchaser paid interest on the judgment for three years after his purchase.  In a *sci. fa.* to again revive the judgment the Court charged, " If the jury find that M. and D. [owners of the judgment] had actual notice that B. [the purchaser] had purchased the property from S. [the defendant], and also find that the deed was executed and delivered on the 26th of March, the defendant is entitled to a verdict."  The verdict was against the defendant, but in favor of the terre tenant.  *Held*, that this charge was not such an error as did the plaintiff any harm.

3. In order to continue the lien of a judgment by an amicable revival the terre tenant is a necessary party.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUN-KEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Berks County*.

*Scire facias* to revive and continue the lien of a judgment for $1850, entered April 6th, 1868, by Daniel Sayer, Sr., against Benneville Schroeder.  November 8th, 1870, the death of the plaintiff was suggested, and Moses R. Sayer, his administrator, was substituted.   The judgment was assigned by him, December 5th, 1870, to Henry H. Maurer, David S. Baer, and Daniel L. De Turk.   April 2d, 1873, a *sci. fa.* to revive was issued, and an amicable revival, by agreement of the defendant, indorsed on the writ.

January 4th, 1878, the present *sci. fa.* to revive was issued. It was served upon the defendant Schroeder, and notice was given to John Becker, terre tenant, who came in and made defence.

On the trial in the Court below before HAGENMAN, P. J., the terre tenant gave in evidence a deed from Benneville Schroeder and wife to John Becker for the property in question, in consideration of $15,000, dated March 26th,

[Sayer to Use *v.* Schroeder.]

1873, acknowledged the same day and recorded April 3d, 1873; also the agreement for the sale, dated December 3d, 1872, showing payments on account by Becker from December 3d, to December 10th, 1872, amounting to $2261.83.

*John Becker*, the terre tenant, testified, *inter alia:*

" I got this deed March 26th, 1873, from Schroeder and wife. . . . I drew the rents from April 1st, 1873. . . . A part of the purchase-money was paid at Bard's office. Think De Turk was there, but can't say particularly. Paid money to Bard. . . . Bard knew that the money was part of purchase-money. Told him. . . . Bard, Maurer, and De Turk knew I bought the property. . . . I told Levan (the tenant in possession) right away when I got the deed. . . . Told him he could stay."

*William P. Bard* testified, *inter alia:*

" I was acting for De Turk particularly, he being jointly interested. I represented H. H. Maurer and Baer. . . . Did not know that money was on account of the purchase-money. . . . Knew the parties were negotiating about the property. Can't say whether before or after I got the money; think before. . . . Don't think any of my clients were present."

*Henry H. Maurer*, one of the use plaintiffs, testified, *inter alia:*

" Am one of the plaintiffs. Bard paid me part of the money he got from Becker as interest. Schroeder owed me the money. . . . I understood the money I got from Bard was paid by Becker. I knew at the time that Becker had bought by agreement. Knew the money I got from Bard was on account of purchase-money of the property. . . . After agreement was made, Becker asked me if we would leave our money stand if he paid up backstanding interest of Schroeder's. Told him I was only partner in money. He then said I should see De Turk about it. Told him I would. Saw De Turk. Told him what Becker said. We agreed, then, that the money might remain on the premises if he would pay up interest that was back by Schroeder."

*Z. H. Maurer* testified, *inter alia:*

" This deed was executed and delivered March 26th, 1873, and left there in my office for Becker. Think I was present when Becker paid Bard interest; were together. Think Becker stated what it was for."

Becker had no notice of the revival.

Indorsements on the judgment bond showed the payment of interest by the *terre tenant* up to April, 1876.

The Court charged the jury as follows:

" This is a *scire facias* to revive a judgment to continue the lien on real estate. The evidence discloses that in 1868

[Sayer to Use v. Schroeder.]

Benneville Schroeder was the owner of real estate in this county and gave a judgment bond to Daniel Sayer for $1850, which was entered of record in the prothonotary's office on the 6th of April, 1868, and became a lien on the real estate then owned by Schroeder. This judgment was assigned, and is now held by Henry H. Maurer and Daniel De Turk, who are the interested parties and real plaintiffs in this action. In December, 1872, Schroeder entered into an agreement with John Becker, wherein he agreed to sell him one-half of the real estate bound by the judgment, and subsequently the other half, the deed to be delivered on or before the 1st day of April, 1873. The deed was duly executed and acknowledged on the 26th of March, 1873, and put in the recorder's office for record on the 3d of April following. On the 2d of April, 1873, Benneville Schroeder, Daniel De Turk, and Henry H. Maurer, according to the recollection of De Turk, went to the prothonotary's office and revived the judgment by what is known as an amicable scire facias. Becker was not present and had no notice of the revival.

"The plaintiffs assume two positions and claim that the revival was legal, and continued the lien of the judgment against the land in the ownership of Becker:

"1. Although the deed was executed on the 26th of March, 1873, it was not delivered before the 3d day of April following.

"2. That even if it was executed and delivered on the 26th of March, the plaintiffs had no knowledge of the sale of the property to Becker, nor had they actual or constructive notice of the execution and delivery of the deed before the 3d of April, when it was entered for record. On both or either of these grounds they claim a verdict, and the Court are so asked to charge.

"The defendant, Becker, maintains that Maurer and De Turk had actual notice that he had purchased the property from Schroeder, and that the deed having been executed and delivered to him on the 26th of March, 1873, and not having been made a party of the record in the revival of the judgment, the lien was lost, and that he is entitled to a verdict.

"There are two modes to revive a judgment to continue the lien, one by an amicable scire facias, confessing judgment on the back of the writ, and the other by adverse process, the writ being served by the sheriff, and judgment recovered in court. Where land, bound by a judgment, is sold, and the lien is sought to be continued, the owner must be made a party on the record, and this whether by amicable proceedings or adverse process. There are circumstances, how-

ever, since the Act of 16 April, 1849, where a revival will be good, and the owner not named as *terre tenant.* Thus, a man being the owner of land gives a judgment, and then sells the land and continues in possession. Until the new owner puts his deed on record, or the judgment creditor has actual notice that the land has been sold, a revival of the judgment between the original parties will continue the lien. One Joseph Levan was the tenant under Schroeder, and continued in possession of the land after the 1st of April, 1873. There being no evidence to show that Maurer and De Turk knew of a change in the tenancy, the possession of Levan was the same as if Schroeder had been in possession.

" The jury will consider all the evidence in making up their verdict.

" If the jury find that the deed, although executed on the 26th of March, 1873, was not delivered before the 3d of April following, the verdict must be for the plaintiffs.

" Again, if the jury find that the deed was executed and delivered on the 26th of March, but that the plaintiffs had no knowledge of the sale of the property to Becker and no actual or constructive notice of the execution and delivery of the deed before the 3d of April, when it was entered for record in the recorder's office, the verdict must be for the plaintiffs.

" On the other hand, if the jury find that Maurer and De Turk had actual notice that Becker had purchased the property from Schroeder, and also find that the deed was executed and delivered on the 26th of March, the defendant is entitled to a verdict. This answers all the points on which the Court was requested to charge, and the theory on which the case was tried on both sides."

May 21st, 1879. Verdict for the plaintiffs against Benneville Schroeder for $2198.75, and in favor of defendant, John Becker, *terre tenant.* Judgment was afterward entered on the verdict.

The plaintiffs then took out a writ of error assigning that the Court erred:

1. In charging the jury as follows: " If the jury find that Maurer and De Turk had actual notice that Becker had purchased the property from Schroeder, and also find that the deed was executed and delivered on the 26th of March, the defendant is entitled to a verdict."

2. In not instructing the jury that the revival of the judgment between the original parties, before the plaintiffs had either actual or constructive notice of the conveyance of the legal title, was sufficient to bind the land in the hands of the *terre tenant* to the extent of the unpaid purchase-money,

notwithstanding the plaintiffs knew at the time of the revival that the *terre tenant* had bought by articles of agreement, but had not paid the purchase-money.

3. The Court erred in not instructing the jury that Becker, the *terre tenant*, having agreed to pay the judgment in suit as part of the purchase-money, and having requested the plaintiffs in said judgment to suffer the same to continue a lien upon the premises in his hands, and having continued to pay the interest upon said judgment after its revival between the original parties, is presumed to have had notice of such revival (if he was entitled thereto), and is estopped from alleging now that he had not.

*Richmond L. Jones,* for plaintiffs in error.

Becker did not take actual possession, nor put in a new tenant. It was a secret transfer. Possession to be constructive notice must be clear, open, and notorious: Meehan *v.* Williams, 12 Wr., 238.

When the judgment was revived there was no notice of the conveyance by record or by actual possession. The transactions were not notice to the plaintiffs of the sale to Becker, but notice to Becker of the lien of the judgment: Jaques *v.* Weeks, 7 Watts, 270; Garrard *v.* Railroad Company, 5 Casey, 154; York Bank's Appeal, 12 Casey, 458.

Becker's payment of interest up to April, 1876, rebuts any presumption of defence, which is the object of notice; at all events, the plaintiffs having had no notice of the conveyance of the legal title, that title is bound: Geiger *v.* Hill, 1 Barr, 511; Zerns *v.* Watson, 1 Jones, 261.

*H. Willis Bland,* for defendant in error.

1. Becker was in possession by tenant at the time of the revival, and the case is within the proviso of the Act of 16th April, 1849: Sec. 8, P. L., 664; Br. Purd. 1, p. 821, pl. 10.

2. It was not necessary for Becker to show in defence to the *sci. fa.* that his deed was recorded April 2d, 1873, because a record would have furnished the plaintiffs in the *sci. fa.* with no knowledge they did not already have in contemplation of law. They had knowledge of Becker's agreement of purchase; they had received on account of the consideration, mentioned in that agreement, $1013, and that made it their duty before reviving their judgment with a knowledge of Becker's equitable title to look into the agreement for the purpose of ascertaining when the legal title was to pass. By a reference to the agreement they would have learned that the deed was to be delivered April 1st, 1873, one day before the revival. "Whatever puts a party

[*In re* H—— T——.]

on inquiry amounts to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, where the inquiry, if pursued, would lead to knowledge of the requisite facts:" Parke *v.* Neeley, 9 Norris, 59; Mulliken *v.* Graham, 22 Smith, 490; McCray *v.* Clark, 1 Norris, 461.

An omission to charge upon a particular point, for which there was no request, cannot be assigned for error: Lilly *v.* Paschal, 2 S. & R., 394; Poorman *v.* Smith, Idem, 464, 469; Dawson *v.* Robinson, 3 W. N. C., 449; Davis *v.* Bigler, 62 Penna. Stat., 242.

If no particular instructions are prayed, the Court is responsible only for the general effect of the charge: Reeves *v.* R.R. Co., 30 Penna. Stat., 454.

MARCH 13TH, 1882.—PER CURIAM : The Court below were not requested by the plaintiff to charge the jury in any particular way, and the second and third assignments must fall on that account.   There can be no reversal for a mere omission to charge.   As to the first assignment, it did the plaintiff in error no harm.   The revival of the judgment, April 2d, 1873, was by amicable action.   To such an agreement, by the Act of 26th March, 1827, P. L., 129, the *terre tenant* is a necessary party to continue the lien: Armstrong's Appeal, 5 W. & S., 352.

Judgment affirmed.